UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL JAMES RAMIREZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DR. JOSEPH BLICK, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:25-cv-01231-EPG (PC)<br><br>ORDER TO ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH A COURT ORDER<br><br>(ECF Nos. 7, 9).<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

　　　　Plaintiff Emanuel James Ramirez is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 6). His complaint, filed on September 18, 2025, alleges that Defendants (all but one of which are prison doctors) denied him his right to adequate medical care in connection with his Valley Fever diagnosis. (ECF No. 1).

　　　　On October 2, 2025, the Court screened the complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 7). The Court gave Plaintiff thirty days to file a first amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at 11). And the Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.* at 12). Thereafter, the Court granted Plaintiff an extension to November 28, 2025, to respond to the screening order, warning that failure to comply with the

1

order "may result in sanctions, including the dismissal of this case." (ECF No. 9).

The extended deadline to respond to the screening order has expired, and Plaintiff has not filed an amended complaint or otherwise responded to the Court's order. Accordingly, for the reasons given below, the Court will recommend that Plaintiff's case be dismissed, with prejudice, for failure to state a claim, failure to prosecute, and failure to comply with a court order.

## I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard.  *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.   SUMMARY OF PLAINTIFF'S COMPLAINT[1]

Plaintiff sues twelve Defendants: (1) California Department of Corrections and Rehabilitation (CDCR) Secretary Jeff Macomber; (2) Dr. Joseph Blick; (3) Dr. Kiwana Hill; (4) Dr. Bruce Troup; (5) Dr. Andrew Nicks; (6) Dr. James Carter Thomas; (7) Dr. Randolph Wilson; (8) Dr. Mark Davis; (9) Dr. Naila Khan; (10) Dr. Saltsgaver Salm; (11) Dr. Vincent Covelli; and (12) Dr. Mariana Lotersztain.[2]

Plaintiff alleges that each of these Defendants denied him adequate medical care in violation of the Eighth Amendment. The Court will address the allegations against each Defendant in detail below. But generally, Plaintiff alleges that, beginning in 2010 he failed to receive adequate medical care concerning his Valley Fever diagnosis (or alternatively referred to as "cocci" in the complaint). His allegations fall into the following categories: (1) he was misdiagnosed; (2) he was not properly informed of the severity of his conditions; and (3) he did not receive adequate treatment.

As for relief, Plaintiff seeks a declaration that Defendants violated his constitutional rights, an injunction requiring Defendants to provide him "necessary medications," and $10 million in damages.

## III.   ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.  Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

---

[1] For readability, minor alterations, like changing capitalization and correcting misspellings, have been made to some of Plaintiff's quotations without indicating each change.

[2] Because Dr. Nicks and Dr. Wilson are not listed on the docket, the Court will direct the Clerk of Court to add them.

action at law, suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

\\\

### B. Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir.

1   2019) (internal quotation marks and citation omitted).

2   With these standards in mind, the Court turns to the allegations against each Defendant.

### 1. Dr. Thomas and Dr. Wilson

Plaintiff alleges that, "from 2010 through 2011 [Dr. Thomas and Dr. Wilson] failed to notify [him] of the severity of his illness or the lung damage that he was diagnosed with." (ECF No. 1, p. 11). Plaintiff indicates that these events occurred at Pleasant Valley State Prison. (*Id.* at 4, 6). Further, "X-Rays taken on 1-31-2011 exhibited said lung damage." (*Id.* at 11). And Dr. Thomas and Dr. Wilson "co-conspired with other doctors employed by the [CDCR] prison system to deceive Plaintiff about his lung damage to avoid liability for damage to [Plaintiff's] health." (*Id.* at 12). Lastly, they placed his "safety at risk by intentional negligence and malpractice." (*Id.*).

Under the above standards, Plaintiff fails to state a constitutional claim against Dr. Thomas and Dr. Wilson. As an initial matter, Plaintiff fails to identify any medical care that Dr. Thomas and Dr. Wilson delayed administering or denied him altogether. Rather, Plaintiff's allegations are that (1) they did not let him know about how severe his illness was or the lung damage he had; (2) conspired with unspecified CDCR doctors to deceive him about his lung damage to avoid potential liability; and (3) were negligent and committed malpractice.

The Ninth Circuit has concluded that "[a] showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi*, 391 F.3d at 1060. Thus, Plaintiff's allegations that Dr. Thomas and Dr. Wilson were negligent and committed malpractice fail to state a constitutional claim for deliberate indifference to Plaintiff's serious medical needs.

Furthermore, Plaintiff's allegations of conspiracy are conclusory. To state a claim for conspiracy under § 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th

Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must allege facts indicating that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974). Although Plaintiff asserts that Dr. Thomas and Dr. Wilson conspired with other CDCR doctors to deceive him about his lung damage to avoid liability, he fails to allege facts showing that there was any agreement, not to mention an agreement to deprive Plaintiff of his constitutional rights.

### 2. Dr. Troup and Dr. Nicks

Plaintiff's complaint alleges that Dr. Troup "misdiagnosed" Plaintiff's "lung damage as 'old granulomatous disease' on Plaintiff's third right-side rib bone, his co-opinion diagnosis by [Dr. Nicks] concurred with the Troup misdiagnosis on 3-26-2011, never informing [Plaintiff] of cocci scarring on his right lung." (ECF No. 1, p. 11). On February 13, 2017, "while at San Quentin State Prison, the same [Dr. Troup] forgot about his prior 3-19-2011 misdiagnosis and re-diagnosed Plaintiff's old granulomatous disease as 'ICM right upper lobe nodular opacity.'" (*Id.*). "Dr. Troup hid the facts from Plaintiff . . . and did not find out about cocci lung scarring until 3-26-2024 from" two doctors who are not named as defendants, which doctors reviewed new x-rays. (*Id.* at 12).

Under the relevant standards, Plaintiff fails to state a claim for deliberate indifference to his serious medical needs against Dr. Troup and Dr. Nicks. Again, Plaintiff's allegations that they failed to properly diagnose his condition amount to negligence, rather deliberate indifference to serious medical needs under the Eighth Amendment. *See Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."). Plaintiff does not allege that Dr. Troup or Dr. Nicks intentionally or purposefully failed to properly diagnose his condition. Furthermore, Plaintiff fails to allege that the misdiagnoses caused him

7

harm.

### 3. Dr. Davis, Dr. Khan, and Dr. Salm

Plaintiff alleges that "from 2021 and 2022 [Dr. Davis, Dr. Khan, and Dr. Salm] gave [him] a misdiagnosis of scabies, dermatitis, eczema, with other skin ailments while being confined at High Desert State Prison." (ECF No. 1, p. 10). He suffered "much pain and constant ongoing discomfort" and "[h]is condition did worsen." (*Id.*). Plaintiff requested a "medical swab of severe rashes" but "his requests were all denied." (*Id.*).

Under the relevant standards, Plaintiff fails to state a claim against Dr. Davis, Dr. Khan, and Dr. Salm. As explained above in connection with Plaintiff's other allegations, the failure of any doctor to properly diagnosis Plaintiff's condition, without more, amounts to negligence, rather than deliberate indifference to serious medical needs. *See Hutchinson*, 838 F.2d at 394. Moreover, Plaintiff does not provide sufficient facts to indicate that any of these doctors were involved in the denial of his request for a medical swab of his rashes. He also does not allege that the lack of a medical swab caused him harm.

### 4. Dr. Hill, Dr. Covelli, and Dr. Lotersztain

Plaintiff alleges that, "[b]y the end of 2022, while at California Correctional Institution, he started to suffer from weight loss, night sweats, rashes that spread with other symptoms that added to his pain and suffering." (ECF No. 1, p. 11). Plaintiff saw Dr. Hill, "who ordered medical testing and then diagnosed [him] with 'the Valley Fever.'" (*Id.*). "She ordered a prescription of Diflucan and after ten months of using said medication, the results were useless. His titer remained at 1:8."[3] (*Id.*). "By the end of November 2023, [Plaintiff] requested to be put on a stronger medication for his illnesses. He also requested to see a specialist for a second opinion, but said request was denied on 11-13-2023 by [Dr. Covelli and Dr. Lotersztain]." (*Id.*). When Plaintiff "requested an explanation with medical opinion, Dr. Hill responded that she did not have any medical answers for him." (*Id.*). Plaintiff "then asked Dr. Hill how severe the cocci diagnosis was, she replied, 'medium range.'" (*Id.*). Plaintiff asked the cause of his

---

[3] Plaintiff fails to explain the significance of his "titer" results, but the Court presumes that he means that his condition was not improving.

8

symptoms and "Dr. Hill replied, 'most likely Valley Fever.'" (*Id.*). "The two years of misdiagnosis of [Plaintiff's] symptom[s] were intentional medical neglect and a form of medical malpractice, [b]olstered by the fact that he was not even given a prescription for eczema cream until 2024, while at California Correctional Institution." (*Id.*). At present, Plaintiff "is still suffering from rashes and other skin irritational symptoms with not one medical remedy that was sufficient for curing his symptoms." (*Id.*).

Under the relevant standards, Plaintiff fails to state a claim for deliberate indifference to his serious medical needs against Dr. Hill, Dr. Covelli, and Dr. Lotersztain. As for all these doctors, Plaintiff alleges that they acted negligently in failing to provide more effective treatment, rather than with deliberate indifference to his serious medical needs. *See Hoang Minh Tran v. Haar*, No. CV 10-07740 CJC SS, 2012 WL 37506, at *3 (C.D. Cal. Jan. 9, 2012) (concluding that plaintiff's allegations that defendants refused to prescribe stronger and more effective medication for his pain reflects only a difference of medical opinion and plaintiff did not state an Eighth Amendment claim).

As for Plaintiff's allegation that Dr. Hill did not have medical answers for him, he fails to explain how this caused him any harm, let alone how Dr. Hill's lack of answers could equate to a purposeful decision to not treat his medical needs.

Lastly, to the extent that Plaintiff alleges that he was not even given a prescription for eczema cream until 2024, he fails to allege that any defendant was involved in this decision or explain how any defendant would have been subjectively aware that their failure to prescribe the cream created a substantial risk of serious harm.

### 5. Dr. Blick and Secretary Macomber

Plaintiff alleges that Dr. Blick "is the chief of medical for the [CDCR]" and Secretary Macomber "is the Secretary of CDCR and have allowed prison medical corruption to intentionally take place." (*Id.* at 12).

Under the relevant standards, Plaintiff fails to state a claim against Dr. Blick and Secretary Macomber. First, Plaintiff does not allege that either Defendant was directly involved in the allegations concerning his Valley Fever diagnosis. Rather, Plaintiff appears sue them in a

9

supervisor capacity based on their positions within CDCR.

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal,* 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

Under these standards, Plaintiff fails to sufficiently allege that either Dr. Blick or Secretary Macomber had any personal involvement with the alleged deprivations of his constitutional rights or implemented a policy that was the moving force behind the violations.

### IV.    FAILURE TO PROSECUTE AND COMPLY WITH COURT ORDER

The Court will likewise recommend dismissal based on Plaintiff's failure to prosecute this case and to comply with the Court's screening order (and later order extending the time to respond). (ECF Nos. 7, 9).

> In determining whether to dismiss a[n] [action] for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to

> manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Therefore, the first factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest. . . . It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants. . . ." *Id.* (citations omitted). Plaintiff has failed to respond to the Court's screening order despite being given an extension of time to do so. (ECF Nos. 7, 9). This failure to respond is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, given that Plaintiff has chosen not to prosecute this action and has failed to comply with the Court's order, despite being warned of possible dismissal, there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's *in forma pauperis* status, it appears that monetary sanctions are of little use to prompt him to comply with future orders. And given the stage of these proceedings, the preclusion of evidence or witnesses is not available. Further, as noted above, Plaintiff has failed to state a claim or respond to the Court's screening order despite being given the relevant legal standards and the opportunity to file an amended complaint. Thus, the lack of

any viable claim supports a dismissal with prejudice rather than a lesser sanction. Therefore, the fourth factor weighs in favor of dismissal.

Finally, because public policy favors disposition on the merits, this final factor weighs against dismissal. *Id.*

After weighing the factors, the Court concludes that dismissal with prejudice is appropriate.

## V.     ORDER, CONCLUSION, AND RECOMMENDATIONS

Accordingly, IT IS ORDERED that the Clerk of Court is directed to assign a District Judge to this case.

Further, IT IS RECOMMENDED as follows:

1. This action be dismissed, with prejudice, for failure to state a claim, failure to prosecute, and failure to comply with a court order.

2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits.

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 22, 2025**          /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE